Burk *v.* Simonson.

No. 10,558.

## BURK *v.* SIMONSON.

WATERCOURSE.—*Change of Channel.—Riparian Owner.—Acquiescence.—Estoppel.—Presumption.*—Where a change is made in the flow of a natural watercourse, either artificially or otherwise, and riparian owners acquiesce in the new state of the stream for so long a time that new rights accrue, or may be presumed to have accrued, such acquiescence is binding, and precludes a restoration of the stream and its surroundings to their original condition.

SAME.—*Canal.—Right of Way.—Eminent Domain.—Benefits and Damages.—Presumption.—Statute of Limitations.*—Where land is taken for a right of way for a canal under condemnation proceedings for that purpose, it will be presumed that all direct benefits to the owner were included in the assessment of damages; and where the canal company constructs embankments and structures which protect a riparian owner's land from overflow, and maintains them for such a period of time as to permit the running of the statute of limitations, it will be presumed that the acquiescence of the owner of the fee was due in part to the benefit which accrued to his land from such embankments and structures, and that all the damages were assessed and paid.

SAME.—*Abandonment of Canal.—Rights of Riparian Owner.*—In such case the abandonment of the canal will not divest the owner of the fee of his right to have the embankments and other structures maintained permanently for the protection of his land.

INJUNCTION.—*Watercourse.—State of Stream.*—Where a person is undertaking to destroy an existing watercourse, or to wrongfully change the existing state of the stream, so as to materially injure another's land, the latter is entitled to an injunction.

SUPREME COURT.—*Submission by Agreement.—Dismissal of Appeal.—Notice to Co-parties.*—Where, on appeal, a cause is submitted by agreement, a motion to dismiss on the ground that notice of the appeal has not been given to co-parties, comes too late to be available.

COURTS.—*Jurisdiction.—State Comity.*—The courts of this State have jurisdiction to prevent a wrong to a citizen of another State where the wrong consists in doing an act upon land in this State.

From the Dearborn Circuit Court.

*F. Adkinson, A. W. Gaines, R. Hill* and *R. N. Lamb,* for appellant.

*H. S. Given, H. D. McMullen* and *D. T. Downey,* for appellee.

ELLIOTT, J.—There are four paragraphs in the appellant's complaint, and to all of them demurrers were sustained.

. Shortly stated, the case made by the complaint is this: The appellant inherited land from his father, who acquired it in 1809 ; the appellee owns land lying adjoining and immediately above that owned by the appellant. In 1838 the Whitewater Canal Company acquired a right of way for the construction of a canal through the lands now owned by these parties, and constructed a canal upon the right of way so acquired. In constructing the canal, a ditch twenty-five feet deep and twenty feet wide was dug along the bank of the Whitewater river. For the purpose of obtaining water for the canal, a feeder-dam was constructed across that river opposite the appellee's land, and a ditch cut from the river to the canal. To protect the land now owned by these parties from being flooded, and to regulate the flow of water from the river into the canal, the company constructed a lock, with stone walls and abutments, by means of which the water was conducted into the canal without injury to adjoining lands. The construction of the dam raised the bed of the river because of the sediment which it caught and caused to be deposited. In 1866 the dam was broken, and the greater part washed away. The canal was then abandoned, but the canal, with all its appurtenances, still belongs to the Whitewater Canal Company. In the condition that the lock, appurtenances, and the embankments now are, no water flows into the canal when the river is in its usual stage, but in times of ordinary freshets it does flow from the river into the channel of the canal. If the lock, appurtenances and embankments are removed, the water from the river will flow into the channel of the canal, the land of the appellant will be flooded, and his soil washed away. The lock and embankments are necessary to prevent the flooding of the land, and their removal will expose it to injury from overflows. The appellee, without right, is engaged in tearing away the lock and its appurtenances.

The lock and appurtenances did not belong to the appel-

lant, and he can not maintain an action as owner, although the appellee is a trespasser.

If there is any cause of action in the appellant, it must rest upon the ground that he has acquired a right to have the artificial structures, the lock, abutments, and embankments remain unchanged. If there were an express contract vesting in him this right, there would be comparatively little difficulty in the case, but no such contract exists, and we are to examine what grounds, if any there are, upon which the asserted cause of action can be justly placed.

It is said that one riparian owner must so use the waters of a stream as not to injure other proprietors. We grant this proposition as applied to natural streams, but it does not meet this case. Angell Watercourses, sections 332, 335, 339; *Hebron G. R. Co.* v. *Harvey,* 90 Ind. 192 (46 Am. R. 199); *Pence* v. *Garrison,* 93 Ind. 345; *Harris* v. *Macintosh,* 133 Mass. 228. The question here is, not as to the right to divert the waters of a natural stream, but as to the right to remove artificial structures and embankments erected in changing the state of a natural stream, and thus restore the stream to its original condition. To such a case the doctrine found in *Pence* v. *Garrison, supra,* and 1 High on Injunctions, sections 794, 815, does not apply.

Eliminating, as we have done, the irrelevant arguments advanced, and clearing the case of matters foreign to its merits, we find the real question to be this, has the appellant a right to have continued the artificial structures which so changed the natural watercourse as to protect his land from injury?

Upon this question the law is with the appellant. There are two reasons for this conclusion. Of these in their order: *First.* The long acquiescence in the change made in 1838 precludes a restoration of the stream and its surroundings to their original condition.

Our proposition is well supported by authority. *Middleton* v. *Gregorie,* 2 Rich. (S. C.) 631, is a well reasoned

case, and we make the following extract from it: "No one has a right to divert a stream from its natural current, to the prejudice of those who own lands below. But where it has been done by a party above for twenty years, his original wrong has ripened into a prescriptive right. Let the proposition be reversed. Is the party below incapable of acquiring a right of exemption from having his land overflowed, by the water's being restored to its natural course? This is what the plaintiff contends for. He says, for more than forty years he has accommodated himself to a state of things existing by mutual consent, or brought about by the acts of the planters above. By way of illustrating his position, suppose that in consequence of the dam he had cut down and drained the land lying next to the river, and had planted it in some crop requiring entirely a dry culture—such as corn or cotton. Would the defendant have a right to cut his dam and destroy the growing crop? For all legal purposes, the plaintiff might, under such circumstances, have regarded his land as though the water had never flowed through it. Indeed, I think he would have as much right to enjoy his property in security, as if he had cultivated dry land above; and it is very clear, that where one has land lying adjacent to a stream, and a proprietor below dams the water back on him, the former has a right of action to abate the nuisance."

In *Woodbury* v. *Short*, 17 Vt. 387, it was held, that, after ten years' acquiescence in the change of a natural stream, a riparian owner can not restore a stream to its original condition where it would injure another owner. The subject received more careful consideration in the case of *Ford* v. *Whitlock*, 27 Vt. 265, where it was said: " But if the diversion affects other proprietors favorably, and the party on whose land the diversion is made acquiesces in the stream running in the new channel, for so long a time that new rights may be presumed to have accrued, or have in fact accrued, in faith of the new state of the stream, the party is bound by such acquiescence, and can not return the stream to its former

·channel." It is said by a recent writer that, "When a stream flowing through a person's land is diverted into a new channel, either artificially or by a sudden flood, affecting the rights of other riparian proprietors favorably, and the owner acquiesces in the new state of the stream for so long a time that new rights accrue, or may be presumed to have accrued, such acquiescence is binding, like a public dedication, and the stream can not be lawfully returned to its former channel." Gould Waters, section 159.

Of the second reason, for our proposition : Where land is acquired for a public purpose, as a canal, railroad, or the like, direct benefits to the owner from its construction are deemed part of the consideration paid by the corporation acquiring the right to construct the public work. This was so under the act which created the Whitewater Canal Company and endowed it with corporate powers. *McIntire* v. *State*, 5 Blackf. 384; *State* v. *Digby*, 5 Blackf. 543; *Vanblaricum* v. *State*, 7 Blackf. 209. If embankments and abutments essential to the construction and maintenance of the canal did protect the appellant's land from overflow, they were to that extent a benefit, and the presumption is that this benefit was taken into consideration, for the ordinary rule is, that a contract for a right of way for a canal, or a condemnation for that purpose and the assessment of damages, includes all direct benefits and damages, thus precluding an owner from maintaining a subsequent action for damages. Where the use of land is continued for such a period as to permit the running of the statute of limitations, the presumption is that all damages were assessed and paid. *The Brookville, etc., Co.* v. *Butler*, 91 Ind. 134 (46 Am. R. 580) ; *Nelson* v. *Fleming*, 56 Ind. 310. The same principle must apply here ; it must be presumed that the long acquiescence of the owner of the fee was due, in part at least, to the benefit which accrued to his land from the embankments and structures constructed by the canal company.

VOL. 104—12

Burk v. Simonson.

The abandonment of the canal did not divest the appellant of his rights nor invest the appellee with authority to deprive him of them. The embankment which protected the latter's land was a benefit to him, and this benefit could not be taken from him. The right thus secured him was a permanent one.

If the appellee or his grantors had in no way consented to the erection of the embankments, he would not be bound by the act of the canal company, but consent was originally given to the change in the state of the watercourse, and for a long series of years the change was acquiesced in by all who were interested in the matter. The building of the dam, the digging of the channel of the canal, the construction of the lock, and the erection of the embankments, were parts of one general undertaking, in which the canal company and the adjoining owners were interested and to which they mutually consented.

Where a defendant is undertaking to destroy an existing watercourse, or to wrongfully change the existing state of the stream, so as to materially injure the plaintiff's land, the latter is entitled to an injunction. *Pence* v. *Garrison, supra; Oliver* v. *New York Bay Cem. Co.,* 38 N. J. Eq. 109; Gould Waters, section 513.

Where a cause is submitted by agreement, a motion to dismiss on the ground that notice of the appeal has not been given to co-parties, comes too late to be of avail. 2 Works Pr., section 1094, auth. n.; *People's Savings Bank* v. *Finney,* 63 Ind. 460; *Field* v. *Burton,* 71 Ind. 380; *Easter* v. *Severin,* 78 Ind. 540; *Hendricks* v. *Frank,* 86 Ind. 278; *Martin* v. *Orr,* 96 Ind. 491.

Judgment reversed.

Filed Sept. 24, 1885.

## ON PETITION FOR A REHEARING.

ELLIOTT, J.—No brief was filed on the merits of the case until after the opinion was filed, although the cause was sub-

Burk v. Simonson.

mitted in November, 1882. Under the established rule, we might well dispose of the case by saying that points not made on the original argument will not be considered on a petition for a rehearing, but, in this instance, we have thought that we are, perhaps, justified in departing from that rule.

It is now said that there was no ruling on the demurrer to the first paragraph of the complaint. There is some confusion in the record, but we think that it shows that the amended complaint supplanted the original, and that it was to all the paragraphs of this amended complaint that the demurrer was sustained. At all events, judgment upon demurrer went against the appellant upon all the paragraphs of his complaint, and this was clearly error, for it certainly is wrong to render judgment upon demurrer, where there is one good paragraph of a complaint unchallenged. It is manifestly error to render judgment against a plaintiff on demurrer, if he has one good paragraph of complaint on file. Whether we regard the amended complaint as entirely supplanting the original, or whether we hold that there was one good paragraph unchallenged, there was material error. But there is error properly assigned upon the ruling on the demurrer to each of the four paragraphs of the complaint, and, as these were all good, the judgment was erroneous, for the general rule is that a party is entitled to a reversal if a demurrer is wrongfully sustained to any one of the paragraphs of his complaint.

It is said that the appellee's land ought not to be burdened for the benefit of the appellant's land, for the reason that the land of the latter is in Ohio. We regard it as quite clear that our courts may prevent a wrong to a citizen of another State in cases where the wrong consists in doing an act upon land within our jurisdiction.

Petition overruled.

Filed Dec. 9, 1885.