### COTTEL *v.* BERRY.

OUTHOUSE–COTTEL *v.* BERRY.

[72 Pac. 584.]

42 593\
46 119\

ARTIFICIAL WATER-COURSE—EFFECT OF AGREEMENT AS TO WATER.

Evidence in a suit for the determination of water rights examined, and *held* to show that on the construction of the water-way the owners through whose lands it ran agreed that the upper owner was to use all water needed for irrigation purposes, the surplus only to belong to the lower owner; and therefore that the rights of the parties were not to be determined by the rules governing riparian owners on a natural stream.

From Union: ROBERT EAKIN, Judge.

A suit by L. Outhouse-Cottel against E. C. Berry and another. Decree for defendants, and plaintiff appeals.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. James D. Slater.*

For respondent there was a brief and an oral argument by *Mr. Neil C. McLeod.*

MR. JUSTICE WOLVERTON delivered the opinion.

About the year 1867 the defendant Harris purchased of one Conley a squatter's right to 320 acres of land, consisting of the

south half of the northwest quarter and the north half of the southwest quarter of section 22, township 1 south of range 39 east, Willamette Meridian, and other lands to the south thereof. About the same time he made a homestead entry upon the north half of the northwest quarter, the southeast quarter of the northwest quarter, and the southwest quarter of the northeast quarter of section 27, in the same township and range, and obtained patent therefor March 20, 1877. In the mean while he obtained title to the south half of the southwest quarter of section 22, but from what source it does not appear. Shortly after having purchased from Conley, Harris sold the squatter's right to one half of the land, being the tract first above described, to his son-in-law, J. A. Knight, for the consideration of $300, and took his note therefor, with the understanding that Knight would permit and assist him to construct a ditch running northerly through said premises for the purpose of draining a lake or swamp some sixty or seventy acres in extent that had been formed by water issuing from a spring situate upon the southeast quarter of the northwest quarter of section 27, the outlet of the ditch to be in the La Grande River, or a slough running into it. The ditch was constructed soon after the sale to Knight, who obtained a deed from the state on September 26, 1871, to the said first-described tract, and conveyed to J. T. Outhouse, the predecessor of the plaintiff, September 26, 1889. There is some dispute touching the understanding between Harris and Knight relative to their respective rights to the use of the water to be conveyed through the ditch. Harris testifies that the purpose of constructing the ditch was to drain his land; that he had no contract or agreement with Knight at the time to give him the free use of any amount of water from the spring, but it was understood that the waste water was to go upon his land; and that he subsequently paid Knight for his work on the ditch by allowing him credit upon his note. Knight's version of the agreement does not widely differ from this, yet there is some contrariety of understanding. He testifies that the ditch was dug to drain and control the water as they wished to use it; that he understood he "was

to have the use—have some of the water to irrigate with,'' and that it was necessary to have the water to raise hay upon his place. On cross-examination, being asked, "Did Mr. Harris at any time promise you that you could have the free use of that water running through there at any and all times?'' he answered: "Well, I don't remember anything like that exactly. As I told you awhile ago, he promised me water to irrigate with—some of the water. Q. Promised you water? A. Yes, to irrigate with.'' He further testifies that he lived upon the place for about ten years after he purchased from Harris, but he owned it until he sold to Outhouse in 1889. Part of this time he did not occupy it, and whether others did under him does not appear. He also testifies that generally during the time he occupied he had water sufficient for his purposes—that is, to irrigate about forty acres of wild grass land —but that at times there was a scarcity; that there was a year or two he did not get any water excepting what wasted down; that he asked Harris to open up the dams in the ditch, so that he could have the use of more water, which he promised to do, but never complied with his promise; that Harris allowed water to run to waste on other land, namely, the Hull place; and that, in his opinion, if it was properly controlled, there would have been sufficient to irrigate the lands of both.

It is further shown quite conclusively that Outhouse, since he became the owner, has had the use of such water only as Harris allowed to flow down through the ditch and otherwise upon his premises; that repeated applications have been made to Harris to permit water to come down the ditch during the dry seasons, and that he has constantly denied all right to the use thereof other than the waste or surplus after the satisfaction of his needs; that he irrigated about 100 acres of grass land, which required several dams in the ditch in order to raise the water high enough to flow out over the meadow; that from the upper dams, there being four in number, it flowed out to the west and southwest, and the waste ran upon Hull's premises, but that from the lower dams the waste flowed upon the lands of plaintiff, or percolated into the ditch again below, and

thence ran down so that it could be utilized by her. The water is principally utilized upon the west side of the ditch, there being some five or six acres under it on the defendants' lands on the east, and about the same acreage, or a little more, on the plaintiff's land, which is in addition to the tracts subject to irrigation above designated. There is running in the ditch a little over nineteen inches of water, miners' measurement, perhaps more during the months of May, June, and July. The suit was instituted to determine the right of the plaintiff to the water that is wont to flow through this ditch. The defendant Harris, by his answer, asserts a right to the exclusive use thereof as a prior appropriator, and plaintiff sets up in her reply a right to the use of one half by virtue of the statute of limitations. The decree being favorable to the defendants, the plaintiff appeals.

Counsel for plaintiff insist that she is at least entitled to a decree adjudging her to be a riparian owner as to the ditch constructed by Knight, her predecessor, and Harris, and as such that she is entitled to a reasonable use of the water flowing therein from the spring, which is the source of supply. This proposition is based upon the premise, which counsel maintains is deducible from the evidence, that the ditch was originally constructed by Harris and Knight without any agreement fixing the respective rights as to the water to be conducted therein. It seems to be a rule of law that, where owners of different parcels of land conduct water across the same in an artificial channel, and do not define their respective interests in the water, their reciprocal rights thereto are to be measured and determined as if they were riparian owners upon a natural stream: Gould, Waters (3 ed.), § 225; *Townsend* v. *McDonald*, 12 N. Y. 381 (64 Am. Dec. 508). We cannot agree with counsel, however, in his major premise. Harris says emphatically: "It was cut for an irrigation ditch when it was cut through. Then the land had to be irrigated with the water." And Knight does not disagree with him as to this, but corroborates his statement as to such a purpose in his assertion that Harris was to let him have some of the water for use on his premises.

And, again, Harris says: ''We had an understanding that it [the ditch] was to be put there, and the water that was wasted, that I could not use—utilize—was to go on his land. I could not keep it from there.'' Knight differs with him as to this, and says, in effect, that the ditch was dug to drain out and control the water, as they wished to use it, and that Harris promised him some of the water to irrigate with. This testimony shows a negotiation, not only as respects the construction of the ditch, but also touching the use of the water to be conducted in it. Just what was determined upon between them is not altogether clear from their respective statements, but the defendants' contention is greatly aided by their acts with reference to the subject following immediately upon the consummation of the project as disclosed by the testimony. Harris began and continued in the use of the water for irrigating purposes as if he possessed the sole right thereto, permitting that which he did not use to flow down to Knight's premises to be used thereon for a like purpose. What is more, Knight never asserted any particular or definite interest in the water, or use thereof, during all the years that he was upon or owned the premises, and was content to take what came to him of the overplus after Harris' needs had been supplied. He sought, it is true, to induce Harris on different occasions to allow the water to come down more freely, but this was done in a manner suggestive of a request, rather than a demand of a right which he was entitled to enforce; but Harris never complied, except as he was not discommoded thereby. And it was thus these parties dealt with reference to the use of the water until Knight sold to Outhouse in the fall of 1889. Since that time there has been no user by the plaintiff or her predecessor to change the relations. A careful consideration of the testimony of Harris and Knight and of their mutual deportment leads us to the conclusion that there was a definite agreement between them relative to the construction of the ditch and the use of the water to be carried therein; that Harris was to have the use of the water for the purpose of irrigating his lands, but was to allow the surplus to go down to Knight, and Knight acquired no other or greater interest or right therein.

The controversy relative to whether Harris paid Knight for his work upon the ditch by an allowance of credit upon the note executed to Harris can have but little bearing upon the case. Knight evidently agreed to the construction of the ditch when he purchased the squatter's right, and their relative rights in the ditch and the water to be conveyed therein were then defined and determined. Plaintiff having derived title from Knight, she could have no greater interest than he possessed. We conclude, therefore, that plaintiff does not occupy the position of a riparian owner upon this ditch, and is not entitled to the use of the water flowing therein, or any part thereof, except such as the defendant Harris may not legitimately and economically use in the irrigation of his land. What Harris did with reference to the control and use of the water issuing from the spring upon his premises was, we think, tantamount to an appropriation thereof for use upon his land; and, furthermore, there was an appropriation by Knight of the surplus, or such as Harris did not need for his use. Through the course of many years, we find Harris has employed the water for the irrigation of about 100 acres of land, possibly 110 acres, and for stock and domestic purposes, and the amount of his appropriation has become fixed and established, and is to be measured by the quantity sufficient for these purposes, to be economically applied and utilized. Any surplus above this use ought to go down to plaintiff.

There is some testimony in the case indicating that Harris and his tenants are needlessly allowing the water to go to waste, and thus diverting it from the ditch or its proper channel, and by this means are depriving the plaintiff of the surplus to which she is entitled. But upon this question the evidence is so meager that we are unable to determine concerning it, and are compelled, therefore, to leave the matter for future settlement. The plaintiff's complaint will therefore be dismissed, without prejudice to the institution of any proper proceeding to determine the question as to defendant's improper diversion of the water to which she is entitled. The decree of the court below will be affirmed.        AFFIRMED.