Argued November 2, decided December 5, 1911.

## PACIFIC LIVESTOCK CO. *v.* DAVIS.

[119 Pac. 147.]

WATERS—RIPARIAN OWNERSHIP.

1. Where defendants had made no appropriation of the water in controversy, and all the parties based their rights thereto as riparian owners, the decree will be predicated upon that ground, since Section 6595, L. O. L., recognizes the doctrine of riparian ownership.

LIMITATION OF ACTIONS—PERMANENT STREAM.

2. Where through a natural obstruction part of the water of a stream was diverted and flowed in a given manner for a time longer than that fixed by the statute of limitations, the water diverted was a permanent stream.

From Harney: GEORGE E. DAVIS, Judge.

Statement by MR. JUSTICE MOORE.

This suit was instituted May 10, 1905, by the Pacific Live Stock Company, a corporation, against Jasper Davis, J. W. Shown, J. P. Withers, Joseph Clark, Fred Haines, Nancy Roper, E. L. Wyatt, F. L. Wyatt, Leora Martin, Belle Tregaskis, and Jennie Curtis, to enjoin interference with the flow of water, the right to which is predicated on plaintiff's ownership of riparian lands.

The defendants Davis, Withers, Clark, and Haines jointly and severally answered, admitting the alleged riparian proprietorship, and setting forth their respective rights to the use of water. Nancy Roper separately answered, but the suit was dismissed as to her. Leora Martin, not having been served with process, made no appearance. The remaining defendants, though served with summons, did not appear or answer.

A reply having put in issue the allegations of new matter in the joint answer, the cause was referred, and from the testimony taken the court made findings of fact and of law, awarding to plaintiff four-ninths of the water in dispute, to be measured where the stream divides, forming branches in the nature of a delta. From this decree

an appeal is taken by the defendants, who jointly and severally answered.                                   MODIFIED.

For appellants there was a brief over the names of *Messrs. Emmons & Webster,* with an oral argument by *Mr. Lionel R. Webster.*

For respondent there was a brief over the names of *Mr. A. A. Smith* and *Mr. John L. Rand,* with an oral argument by *Mr. Smith.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. It is maintained by defendants' counsel that, as the townships in which are situated the lands owned by the respective parties hereto were not surveyed until after March 3, 1877, no title to such premises could have been secured prior to the passage of the desert land act, and that the principle announced in *Hough* v. *Porter,* 51 Or. 318 (95 Pac. 732: 98 Pac. 1083: 102 Pac. 728), controls, preventing plaintiff from asserting a right to any of the waters involved herein under the claim of riparian ownership. This suit was commenced before the decision was rendered in the case to which attention is called, and as neither of the defendants herein allege an appropriation of any water, but rely upon respective claims of riparian proprietorship, the decree to be rendered will be predicated on that ground, since the statute recognizes the existence of such right. Section 6595, L. O. L.

Considering the case on its merits, the evidence discloses that Rattlesnake Creek rises in the northern part of Harney County and flows southerly to the N. E. ¼ of section 19 in township 22 S. of range 32½ E., where the stream divides, and a branch flowing from it to the left is known as "East Fork." About a quarter of a mile below such separation the creek again divides, and a branch flowing from it to the right is called "West Fork"; the center stream being designated at that place and below as

the "Middle Fork." Rattlesnake Creek being thus diverged, each of its three branches flows southerly about two miles or more across nearly level land, over which, during freshets, the water spreads and finally disappars, probably becoming visible farther south as a part of Malheur Lake. The channel of West Fork from the place of its diversion extends southerly across lands owned by the defendants Shown and Clark, in the section named, and thence over lots 1 and 2 of section 30 in the township and range referred to, which tracts of land are respectively owned by the defendants Davis and Haines. The channel of the West Fork then crosses the township line and continues southerly across the east sides of sections 25 and 36 in township 22 S. of range 32 E., which latter section is owned by plaintiff. The water, caused by melting snow, originally flowed in the West Fork to plaintiff's premises, where, diffusing over and standing for some time on the surface of the easterly half of its land, it prevented the growth of sage brush and greasewood, and produced natural grass, affording pasturage and hay, and facilitating the raising of stock, in which business plaintiff is engaged. The flow continued in the several branches to their respective basins or sinks until about June 1st of each year, when no water could be found, except such as was afforded by a few springs in or near the channel of the East Fork. The flow in the West Fork seems gradually to have diminished each year for some time, owing to the deepening of the channels of the Middle and East Forks, the waters from both of which have been used by the defendants to subirrigate their lands, by putting dams in the streams, causing the moisture to percolate the soil. A slight ridge extending southeasterly across plaintiff's land divides it, and the westerly half is moistened by the waters of Coffeepot Creek, a stream flowing southeasterly across its premises, the easterly half of which has been overflowed by waters

from the West Fork. Davis straightened the channel of West Fork across his premises, filling the deep places, plowing the land, and raising grain on what, at one time, had been parts of the bed of the stream. The waters of Middle and East Forks have been used by the defendants to subirrigate their respective tracts, in the cultivation of which the quantity required each year has increased as the area of the tillable lands has been augmented.

The water in Rattlesnake Creek in the year 1904 was less than it had previously been, and by reason thereof, and in consequence of the diversions, the hay crop that season on plaintiff's land was almost a failure. In order to prevent a scarcity of water during the next year, this suit was instituted, based on the modern doctrine that as a riparian proprietor plaintiff was entitled to a reasonable quantity of the water of West Fork for irrigation, and that interference with the flow in the channel of that stream by the defendants constituted an infringement of right. The answer of Davis and others admitted the riparian ownership, but alleged that not more than two-ninths of the water of Rattlesnake Creek ever passed into the West Fork, which quantity flowed in the channel of that stream to plaintiff's premises. The trial court found, however, that four-ninths was the measure of plaintiff's right and gave a decree in accordance therewith.

We have carefully examined the evidence which has been brought up, and are unable to agree with the conclusion thus reached. In the year 1870, when a knowledge of the condition of these streams seems first to have been acquired by white men, it is quite probable that Middle and West Forks were the only branches, and that the latter contained the greater quantity of water. The land through which these streams flow is very level, and East Fork was evidently formed by some obstruction in the bed of Rattlesnake Creek, whereby a part of the current was diverted to the left, but when this occurred cannot

be determined from the evidence. C. M. Foster, as plaintiff's witness, was interrogated as to the head of East Fork as follows:

"What is there in the main channel of Rattlesnake Creek at that point to divide the water, if anything?"

He answered:

"There is floatwood, and I think a log, and willows have grown up, and seemingly that floatwood and log has spread the waters of the creek. It has that appearance."

The witness first saw that stream in the year 1900, and, as we understand his testimony, East Fork was then, and for several years prior thereto had been, an existing channel.

2. When that branch separated from Rattlesnake Creek cannot be ascertained, though it seems that in the early settlement of the country the East Fork consisted of waters flowing in a gulch, and it then had no connection with the parent stream. East Fork has undoubtedly flowed in the manner indicated for a longer period than that fixed by the statute of limitations and has become a permanent stream. *Cottel* v. *Berry,* 42 Or. 593 (72 Pac. 584) ; *Harrington* v. *Demaris,* 46 Or. 111 (77 Pac. 603 : 82 Pac. 14 : 1 L. R. A. (N. S.) 756.)

The evidence tends to show that plaintiff's predecessors in interest had for many years annually cut hay from section 36 in township 22 S. of range 32 E., but that neither they nor its agents had ever made any effort to remove from the channed of Rattlesnake Creek the driftwood and log, which, naturally floating therein during a flood, had lodged, without the help of either of the defendants, causing sediment to be deposited, willows to be propagated at that place, and water to be diverted, forming the East Fork.

Various estimates of the relative quantities of water annually flowing in the East, Middle, and West Forks were made by witnesses who appeared for the parties;

but the uncertainty of the testimony on this subject is apparent from a perusal of the transcript. This obscurity induces the conclusion that each branch, except possibly the West Fork, had for a period of more than ten years prior to the commencement of this suit carried an equal quantity of water, and that in decreeing to plaintiff a flow in the West Fork of more than one-third of the volume of Rattlesnake Creek above the place of either diversion an error was committed.

The decree will therefore be modified as here indicated; the defendants to recover their costs and disbursements in this court, and each party to pay its and his own costs and disbursements in the court below.          MODIFIED.