FRODERMAN v. DIETZ

[No. 18,038. Filed May 26, 1950. Rehearing denied June 28, 1950. Transfer denied October 19, 1950.]

*Warren Buchanan,* of Rockville, and *Craig & Craig,* of Brazil, for appellant.

*Dix, Dix & Patrick;* and *Thomas M. Patrick,* all of Terre Haute, for appellee.

DRAPER, J.—The special findings disclose that on August 10, 1933, the appellee owned a quarter section of land in Clay County. Fred C. Froderman owned the quarter section adjoining to the north, and Walter L. Brand owned the west half of the quarter section which adjoined the land of Fred C. Froderman to the east. A pond of surface water stood partly on the land of Fred C. Froderman and partly on the land of Walter L. Brand. At a point on the land of Brand the pond overflowed into a stream which ran southwesterly across the land of Brand and onto and across the land of the appellee.

In wet weather the land around the pond and creek would flood, and in dry weather the creek would dry

up. To remedy that condition Fred C. Froderman, Brand and the appellee mutually agreed to contribute time, labor and materials for the construction of a dam at the outlet of the pond, so as to conserve the water therein, prevent flooding, and assure a constant supply of water throughout the year by controlling the flow of water from the pond into the stream. They agreed they would have joint and several control of the outlets of the dam and each agreed to exercise his right of control of the outlets in such a manner as to permit water to flow from the pond in a volume which would not cause the stream to overflow, and in such a manner as to provide an ordinary and continuous flow in said stream, and not otherwise. It was further understood that such agreement should continue until modified by mutual consent. A concrete and steel dam which had controllable outlets at varying levels was accordingly built.

On or about October 10, 1938, Brand granted the appellee the right to construct and maintain a cistern and a valve controlled pipeline which started at a point on Brand's land near the dam, and ran across the Brand land onto and across the appellee's land, the understanding being that such right would continue so long as the appellee desired, and said pipeline was accordingly completed and put in operation.

After the dam was built in 1933, Fred C. Froderman, Brand and the appellee frequently crossed Brand's land for the purpose of maintaining and controlling the operation of the dam in accordance with the agreement. On December 18, 1944, Brand conveyed his half quarter section to the appellant, August Froderman. The appellant took title with full knowledge of the existence of the agreements, the dam, the valve controlled pipeline and the rights of the appellee in connection with each of them.

From December 18, 1944, to about August 1, 1947, the appellee, the appellant and Fred C. Froderman maintained and controlled the dam and the flow of water therefrom and the appellee continued to use the pipeline, but on the latter date the appellant opened the outlets and dug away parts of the dam, thus flooding the appellee's land and depleting the water reserve, and he also shut off the appellee's supply of water through the pipeline. Since then the appellant refuses to allow appellee to enter the land to maintain and operate the dam and valves. Unless enjoined, the appellant will continue such conduct, to the irreparable damage of the appellee, who requires a steady flow of water for the operation of his hatchery business.

The court concluded, among other things, the law is with the appellee; the appellant's land is subject to an easement in favor of appellee's land; and the appellee has the right to enter appellant's land for the purpose of maintaining, operating and controlling the dam and pipeline without interference from the owner of the appellant's land. A judgment was entered permanently enjoining the appellant from opening the outlets in the dam in such manner as to flood the lands of appellee or waste the water in the pond; from digging away or damaging the dam; from interfering with the valves or controls of the pipeline; and from preventing the plaintiff from entering the land for the purpose of maintaining or repairing the dam or controlling the outlets in the dam or pipeline.

The appellant asserts error in each of the court's conclusions of law.

We have a case where, pursuant to an oral agreement between the original owners, the natural accummulation of the flow of water has been changed by artificial means. The change was made for the benefit of all the contracting parties, and the

changed conditions have obtained for many years. The appellant bought with full knowledge and for nearly three years he cooperated in maintaining the dam and regulating the flow of water. Under the authorities we think the appellee acquired an irrevocable license or right to maintain the dam and pipeline and to enjoy the benefits thereof. The appellee has the right to enter the land of the appellant for the purpose of maintaining the dam and pipeline and regulating the flow of water. The appellant's land is subject to an easement for that purpose. He has no right to destroy the dam or pipeline or to so regulate and control them as to defeat their intended purpose. Neither may he interfere with the appellee's right to maintain and operate them in furtherance of that purpose. *Joseph et al.* v. *Wild* (1896), 146 Ind. 249, 45 N. E. 467; *Burk* v. *Simonson* (1885), 104 Ind. 173, 2 N. E. 309, 3 N. E. 826; *Cloyes* v. *Middlebury Electric Co.* (1907), 80 Vt. 109, 66 Atl. 1039.

Although injunctive relief was held to be appropriate in the cases just cited, the appellant says it was improperly granted in this case because courts will not enforce by injunction a civil contract which involves the performance of a continuous and protracted series of acts which demand the exercise of individual skill or discretion. He argues that the parties might honestly and in good faith differ concerning the proper regulation of the flow of water and he says the decree therefore could not and should not be enforced.

The decree does not undertake to compel the appellant to help maintain the dam or regulate the flow of water. The decree is preventive. The appellant has the right to help maintain the dam and regulate the flow of water, but he has no right to interfere with the appellee's right to do so, nor to undermine or

destroy the dam or pipeline or the appurtenances thereto, nor to so operate the controls as to cause a flood or waste the water. We think reasonable men would not differ greatly concerning the proper and timely operation of the controls. In our opinion it will not be difficult for the trial court to determine whether the decree has been willfully violated, or to enforce the decree if such a situation should develop.

It is probable that the court could not enforce specific performance of the affirmative stipulations of the contract against any party to it, or against any party bound by its terms. But it does not necessarily follow that the court will refuse to enforce the negative covenants thereof. The original owners specifically agreed not to operate the controls in such manner as to cut off the flow of water in the stream, or in such manner as to overflow said stream or permit more water to flow into it than was necessary to maintain therein an ordinary flow of water. The agreement was to continue until modified or revoked by mutual consent.

In addition to the negative covenants expressly made, the parties impliedly agreed not to undermine or destroy the dam, or keep the others from maintaining it and enjoying its benefits. The breach of such negative covenants may be enjoined. 43 C. J. S., Injunctions, § 80b; 28 Am. Jur., Injunctions, §§ 78, 81.

The appellant was bound by the terms of the original agreement. *Joseph et al.* v. *Wild, supra; Burk* v. *Simonson, supra.* The remedy extended to the appellee in this case would be equally available to the appellant if the situation were reversed.

Judgment affirmed.

NOTE.—Reported in 92 N. E. 2d 553.