## MATHIAS SCHAEFER *vs.* JACOB MARTHALER.

### February 17, 1886.

**Waters—Surface Water—Lake.**—When surface waters reach and become part of a permanent body of water retained in a natural basin or receptacle, forming a lake, they lose their character as surface waters, and the rules applicable to such waters do not apply to such a lake.

**Same—Right to Drain Lake.**—Where such a lake is situate on the lands of different owners, neither can drain it without the consent of the other.

Appeal by defendant from a judgment of the district court for Dakota county, *Crosby,* J., presiding, perpetually enjoining the defend-

ant from interfering with or directing the course and flow of the lake mentioned in the opinion.

*Cyrus J. Thompson,* for appellant, cited *Eulrich* v. *Richter,* 37 Wis. 226; *Pettigrew* v. *Village of Evansville,* 25 Wis. 223; *Gannon* v. *Hargadon,* 92 Mass. (10 Allen,) 106; *Nevins* v. *City of Peoria,* 41 Ill. 502; *Livingston* v. *McDonald,* 21 Iowa, 160; *Barkley* v. *Wilcox,* 86 N. Y. 140; *Rawstron* v. *Taylor,* 11 Exch. 369.

*Samuel E. Hall,* for respondent.

GILFILLAN, C. J. Action to enjoin defendant from draining a small lake or pond. The parties own and occupy adjoining lands. There is situated partly on the plaintiff's land and partly on defendant's land a body of water, four and one-fourth acres in extent, in a natural depression forming a basin, fed solely by surface waters produced by rains and melting snows falling upon higher adjacent lands, and running naturally into such basin. The greatest depth of the water in the basin, at the deepest place, is, at an ordinary stage, five feet, and at the same stage its greatest depth on the line between the lands of the parties is two and nine-tenths feet. The character of the soil under the basin is such that it retains the water, so that the only waste is from evaporation, except during high water, for six or eight weeks in the year, when it overflows through a natural channel situate on defendant's land. There is another natural channel on defendant's land, through which, during heavy rains, and when there is an accumulation of water on the high lands from melting snow, the water flows into the basin. The parties have owned and occupied their respective lands for 30 years, and the body of water has never, so far as known, been dry, except at a time of extreme drought in the year 1864. In winter the water freezes to the bottom, but, by cutting through the ice, and digging into the mud at the bottom, water for stock can be obtained, in which manner plaintiff has often procured water for his stock.

There must be in this state a great number of bodies of water similar to this—some larger, some smaller—situate upon lands of different owners; so that the question involved is one of considerable importance. The question has never been before this court. In *Bennett* v. *Murtaugh,* 20 Minn. 135, (151,) an injunction against draining a

small lake was sustained, but the point here raised was not presented.

The defendant claims the right to drain the lake or pond, on the proposition that it is surface water, (because coming into the basin, over the surface of adjacent lands, from rains and melting snows,) and that the rule applicable to surface waters applies. It is somewhat strange that, so far as we are able to ascertain, there is no case reported which decides the rights, with respect to such a body of water, of the different owners of the land on which it lies. The cases most nearly analogous are those relating to watercourses. Under the common law there is a marked difference in the rules governing in cases of surface waters and those applicable to watercourses; for one owner is under no obligation to receive upon his own land surface waters from the land of another, nor to permit them to flow from his land to that of another, nor to retain them on his land for the benefit of other lands. Such waters belong to or are a part of the land on which they happen to be at the time, and the owner may ordinarily do what he will with them while on his land, doing no unnecessary harm to others. But a natural watercourse is the common property of the lands through which it flows, to this extent: that no owner may arrest its passage, either to prevent its coming upon his own land, or going to the land of another. It is regarded as an advantage or element of value to each piece of land through which it flows, which nature has bestowed upon it, and which belongs as much to one piece of land through which it runs as to another. When surface waters reach and become part of a natural watercourse, they lose their character as surface waters, and come under the rules governing watercourses. *Broadbent* v. *Ramsbotham*, 11 Exch. 602; *Earl* v. *De Hart*, 12 N. J. Eq. 280; *Jones* v. *Hannovan*, 55 Mo. 462; *Swett* v. *Cutts*, 50 N. H. 439; *Gibbs* v. *Williams*, 25 Kan. 214; *Palmer* v. *Waddell*, 22 Kan. 352. But before they reach the watercourse, while they are still surface waters,—that is, while they are oozing through the soil, or diffusing or squandering themselves over the surface, following no defined course,—the owner of the soil on which they happen to be may appropriate or divert them in the ordinary and reasonable use of his land. He is under no obligation to keep his land as a water-shed, to feed the stream; nor to keep it as a receptacle to receive and retain

the overflow from the stream. The waters pass beyond his right of appropriation as soon as they reach, even on his own land, the natural watercourse. His right in respect to the waters is then qualified, and must be exercised with due regard to the rights of others in the stream.

And such waters, when they have ceased to spread and diffuse over the surface or percolate through the soil; when they have lost their casual and vagrant character, and have reached and come to rest in a permanent mass or body, in a natural receptacle or reservoir, not spreading over or soaking into the soil, forming mere bog or marsh, —cannot be regarded as surface waters any more than they can be after they have entered into a stream. The mass or body of water constituting a lake or pond is an advantage or element of value to the lands upon which nature has placed it, of the same kind as is the watercourse to the lands through which nature has caused it to flow. There is no reason which can be suggested why the stream should be the property of each on his own land, of all the lands through which it flows, and why one owner should not prevent its flow as nature caused it to flow upon the land of another, that is not equally applicable to a body of water like this; and none can be suggested why the rights of the owners of the lands upon which nature has placed it should not be equal to the rights in respect to a stream. Applying the same rules that apply in respect to a watercourse, it would follow that no one is bound to keep his land as a water-shed, to feed such a body of water, nor as a receptable to retain the overflow from it; but that, in the reasonable and ordinary use or improvement of his land, he may interfere with or arrest the surface waters before they reach such body, or may drain off any bog or marsh on his land formed by the overflow, although the doing of either may incidentally affect the amount of water in the lake or pond. We therefore hold that defendant had not the right to drain off the lake.

Judgment affirmed.

BERRY, J., (*dissenting*.) In view of the consequences to which the foregoing opinion necessarily leads, and of the absence of authority to support it, (especially when we consider how frequently a like *state*

*of facts* must have existed,) I find myself unable to agree with my brethren in this case. Of course, I do not consider—as the majority opinion does not—the effect of the thirty-years user upon the rights of the parties.