THE MISSOURI PACIFIC RAILWAY COMPANY v. J. P. WREN.

No. 396.* (62 Pac. 7.)

INCONSISTENT FINDINGS—*Natural Watercourse.* The special findings set forth, and *held* to be inconsistent with the general verdict, because they show that a natural watercourse did not in fact exist.

Error from Bourbon district court; W. L. SIMONS, judge. Opinion filed July 25, 1900. Reversed.

*J. H. Richards*, and *C. E. Benton*, for plaintiff in error.

*Humphrey & Hudson*, for defendant in error.

The opinion of the court was delivered by

SCHOONOVER, J.: J. P. Wren, defendant in error, recovered a judgment in the district court of Bourbon county against the Missouri Pacific Railway Company, plaintiff in error, for damages alleged to have been done to his growing crops by reason of the obstruction by the railway company of a natural watercourse. The case was tried to a jury, which, in addition to a general verdict, returned into court

---

*Petition for order to certify denied by supreme court September 22, 1900.— REP.

special findings of fact.   These findings, so far as they are material to the determination of the questions presented to this court, are as follows :

"3.  Is it true that the lands mentioned in plaintiff's bill of particulars and the lands surrounding it are bottom lands?  Ans. Mostly.

"4.  Are there any hills or bluffs on or around the land occupied by the plaintiff which is referred to in the bill of particulars?  A.  No ; they are slopes."

"11.  Did any water of any consequence flow into the depression alleged to be a natural watercourse except such as fell from the clouds in the shape of snow or rain?  A.  But very little.

"12.  Does the depression claimed on behalf of plaintiff to be a ravine or natural watercourse extend to any high bluffs?  A.  No.

"13.  Did any of the water which flowed into or through said depression come from high bluffs?  A.  No.

"14.  Has any part of said depression alleged to be a natural watercourse been cultivated since the construction of the railroad ?  A.  Yes.

"15.  Were any of the crops of plaintiff growing in said depression alleged to have been damaged ? A.  Yes.

"16.  Can any portion or portions of said depression alleged to be a natural watercourse be cultivated ?  A.  Yes, if it is a dry season.

"17.  Does not the land on either side of the depression or waterway on Hickson's farm generally lie on a slope or incline ?  A.  Yes.

"18.  If the depression or place where the water runs or waterway on Hickson's land should be dammed up or filled up, would not the water which flows therein simply spread over a wider surface? A.  No evidence that it would or would not.

"19.  Is it not true that, as the culvert or opening complained of is under the railroad bed, the water which backs up north of it at times of overflow does not stand on the land any great length of time?  A. Not proven.

"20. Is it not true that the damming of the water at that point is only during the heavy rains, and does not, therefore, for any considerable period at one time prevent the use of the land where plaintiff's crops were for agricultural purposes? A. Yes."

"22. Is it not true that that portion of the lands upon which plaintiff's crops were, and which was overflowed, was all plowed and cultivated during the season of 1895 and prior thereto? A. All in 1895, and part in 1894."

"24. Is it not true that following from the railroad bed up from the place or depression where the water runs through the place where the plaintiff's crops grew and a distance of about 250 to 300 feet there is no distinct channel with well-defined banks cut through the turf and into the soil by the flowing of the water so that there is a bed of a stream, which presents on casual glance to every eye the unmistakable evidence of the constant or frequent action of running water, and which was occupied by corn? A. No; because the channel is filled up by the deposit of sediment.

"25. If you answer the last question in the negative, state in answer to this where, within such distance, such channel is located. A. About 300 feet distant.

"26. Was the land where the water which overflowed the crops of plaintiff first fell or started a place of well-defined hills or bluffs, or was it rolling or undulating land? A. Rolling, undulating land.

"27. Did the water which overflowed plaintiff's crops first pass through gorges or deep ravines? A. No."

"29. Are there any hills or bluffs on the land of Hickson, and if so, where? A. No.

"30. Are there any gulches or ravines between hills or bluffs on the land, and if so, where? . . ."

"32. Where did the water which overflowed plaintiff's crops first come from, the clouds or some source on or in the earth? A. From the clouds.

"33. If from the clouds, where did it fall before it

flowed towards or into the draw? A. On the surface of the earth."

"38. Was not the waterway in question what is commonly known in Kansas as a 'draw,' or of similar character? A. 'Draw' or watercourse.

"39. Did it have any name? A. No.

"40. Is it not true that the body of water which accumulated in and about the draw north of the railroad embankment in question was water which first fell in the form of rain from the clouds onto the sloping land north, east and west of the draw in question, and thence flowed in from all sides to the draw, and thereby caused the overflow of the land in question? A. Yes."

The railroad filed a motion for judgment upon the special findings, which motion the court overruled, and judgment was rendered in favor of Wren upon the general verdict. The railroad company brings the case here.

It is urged by plaintiff in error that the special findings show that the company did not obstruct a natural watercourse; that the damage was caused by surface-water; and that the railroad company was, therefore, not liable for the injuries to Wren's crops. We are, therefore, called upon to examine such findings in order to ascertain whether they are inconsistent with the general verdict—that is, whether such findings show that a natural watercourse did not, in fact, exist. In this state, a watercourse may exist under one of two conditions:

1. "Where surface-water, having no definite source, is supplied from falling rains and melting snows from a hilly region or high bluffs, and, owing to the natural formation of the surface of the ground, is forced to seek an outlet through a gorge or ravine, and by its flow assumes a definite and natural channel, and escapes through such channel regularly durin~ ᵇᵘ

spring months of every year and in seasons of heavy rains, and such has always been the case, so far as the memory of man runs, such accustomed channel through which the waters flow possesses the attributes of a natural watercourse." (*Palmer v. Waddell*, 22 Kan. 352.)

2. "Where the supply of water is not from mere surface-drainage occasioned by falling rains and melting snow, but is definite and certain, as, for instance, from a spring, and such water flows in a well-defined channel, with banks cut through the turf and into the soil by the flowing of the water, such stream is a watercourse; the flow of the water need not be continuous and the size of the stream is immaterial." (*Pyle v. Richards*, 17 Neb. 180, 22 N. E. 370; *Hoyt v. City of Hudson*, 27 Wis. 656; *Town v. Missouri P. R. Co.*, 50 Neb. 768, 70 N. W. 402; 28 A. & E. Encycl. of L. 945.)

The special findings clearly show that a watercourse did not exist within the rule laid down in the case of *Palmer v. Waddell*, supra. The writer of this opinion believes that findings 11, 24 and 25 show that a watercourse existed within the second rule heretofore stated; but a majority of the court hold otherwise, and the judgment of the district court will therefore be reversed, and the cause remanded with instructions to render judgment for defendant upon the special findings.