ROBERT R. FROEMKE and Herman A. Froemke, Plaintiffs and Respondents, and PETER OLSON and Ingebor Sunby, Interveners and Respondents, v. W. S. PARKER and L. Altman, Defendants and Appellants.

### (171 N. W. 284.)

**Water and watercourses — sloughs not treated as surface waters.**

1. The waters of a slough that has existed for over thirty-five years, with waters remaining therein almost constantly, in extent covering 40 acres, more or less, being a natural depression for the reception of the surface waters of the tributary adjacent watershed for which there is no natural outlet, are not to be treated as surface waters, even though the supply thereof is exclusively from surface waters.

**Watercourse — what constitutes — sloughs cannot be drained at expense of lower landowners.**

2. A runway or draw, naturally serving to drain off the surface waters of a tributary watershed occasioned by the winter's snow or the spring rains, serving this purpose only temporarily, though periodically, otherwise used and being capable of use for agricultural purposes, is not a watercourse.

**Waters and watercourses — lower landowner cannot complain of the reception of surface waters in natural drainway.**

3. Such draw or runway is simply a natural drainway for the surface waters of the watershed that it serves. The lower landowner over whose land such

---

NOTE.—On right to hasten flow of surface water along natural drainways, see notes in 19 L.R.A.(N.S.) 167, and L.R.A.1916F, 427.

As to what is surface water, see note in 25 L.R.A. 527.

natural drainway exists has no legal ground of complaint to the reception of the surface waters in such drainway from the tributary watershed as they were accustomed to come in a state of nature.

**Artificial drainage — may be stopped by injunction.**

4. Where the owner of the land upon which such slough is located has constructed a tile drain from such slough to such drainway some 1,800 feet in length, the purpose and effect of which is to drain off the waters therein upon and through such drainway to the damages of the lower landowners, no legal right exists so to do, and injunction will lie to prevent the maintenance of such tile drain.

**Neither civil nor common enemy rule applies.**

5. *Held*, under the facts, that there is no question presented for the application of either the civil law rule or the common enemy rule concerning surface waters.

Opinion filed January 30, 1919.

Appeal from District Court, Ransom County, *Allen, J.*

Action to enjoin discharge of waters.

From a judgment entered for plaintiffs and interveners, defendants appeal.

Affirmed.

*Kvello & Adams,* for defendants and appellants.

The case of Soules v. N. P. R. Co. 34 N. D. 7, 157 N. W. 823, states the two rules as to surface water. See Hannaher v. St. Paul, etc., R. Co. 5 Dak. 1, 37 N. W. 717; Carroll v. Rye Twp., 13 N. D. 458, 101 N. W. 894; 40 Cyc. p. 639, where the text defines surface waters; Brandenberg v. Zeigler, 62 S. C. 18, 89 Am. St. Rep. 887; Sheenan v. Flynn, 59 Minn. 436, 161 N. W. 462; Thompson v. Andrews, 165 N. W. 9; Mischler v. Peterson, 166 N. W. 640.

A watercourse entitled to the protection of the law is constituted if there is sufficient natural and accustomed flow of water to form a distinct and definite channel. It is not essential that the supply of water should be continuous or from a perennial living source. It is enough if the flow arises periodically from natural causes and reaches a plainly defined channel of a permanent character. Soules v. N. P. R. Co. 34 N. D. 7; Riechert v. N. P. R. Co. 167 N. W. 127; 40 Cyc. 553.

"To constitute a natural course, it is not necessary that the flow of water be sufficient to wear out a channel having well-marked sides and banks, but if the surface water uniformly or habitually flows over a given course having reasonable limitations as to width the line of the

flow is a watercourse." For further definition see Lambert v. Alcorn (Ill.) 33 N. E. 53; Rubordy v. Murray (Ill.) 52 N. E. 325; Quinn v. C. M. St. P. R. (S. D.) 120 N. W. 884; Thompson v. Andrews (S. D.) 165 N. W. 7; Mishler v. Peterson (S. D.) 166 N. W. 645.

*Pierce, Tenneson, & Cupler,* for plaintiffs, interveners and respondents.

The lower proprietor has no right to obstruct the runway, and is liable for the resulting injury to the upper proprietor from such act. Soules v. Northern P. R. Co. 34 N. D. 7, L.R.A.1917A, 501, 157 N. W. 823.

Followed in McHenry County v. Brady, 37 N. D. 59, 163 N. W. 540; Quinn v. C. M. & St. P. R. Co. 22 L.R.A.(N.S.) 789, and note, 30 Am. & Eng. Enc. Law, 323 to 324.

The test to determine whether water is "surface water" is not that it is caused by or comes from snow and rain, because many creeks, streams, and other watercourses have their only source of supply from rain and snow. McKinley v. Union County, 29 N. J. Eq. 171; Kelly v. Dunning, 39 N. J. Eq. 482; Cario v. Brevart, 25 L.R.A. 527, and note; Roit v. Furrow, 6 L.R.A.(N.S.) 157.

Even surface water cannot be cast upon the servient or lower estate by artificial means. Note to Mizell v. McGowan, 85 Am. St. Rep. 726; Farnham, Waters, § 885, pp. 2574, 2575; Butler v. Peck, 16 Ohio St. 334, 88 Am. Dec. 452; Davis v. Lond Green, 8 Neb. 43; Wendlandt v. Cavanaugh (Wis.) 55 N. W. 408; North Point v. Utah, 40 L.R.A. 851, 67 Am. St. Rep. 607, 52 Pac. 168; Dickenson v. Worcester, 7 Allen, 19, 40 Cyc. 645, 647; Brandenberg v. Zeigler, 62 S. C. 18, 55 L.R.A. 417.

Appellants were not justified in draining the slough because on one or two occasions it overflowed its northerly bank. North Point v. Utah, 40 L.R.A. 851; Wendlandt v. Cavanaugh, 55 N. W. 409; Boll v. Ostroot (S. D.) 127 N. W. 577; Anderson v. Drake (S. D.) 123 N. W. 673; Kruptke v. Stockard (Minn.) 115 N. W. 175.

BRONSON, J. This is an action for injunctional relief and for damages occasioned to farm lands of the plaintiffs and interveners through the construction of a tile drain upon the lands of the defendants for the purpose of draining waters from and across the same. The appellants appeal from the judgment rendered by the trial court awarding injunc-

tional relief in favor of the plaintiffs and interveners, and demand a trial *de novo* in this court.

For the purpose of considering the principles of law applicable on this record, it is necessary to state somewhat at length some of the material facts in this case, and to incorporate herein a rough sketch marked exhibit "A" of the premises involved, in order to better comprehend such facts and the principles of law applicable thereto.

# EXHIBIT A

Exhibit "A," showing governmental sections and the subdivisions thereof of the land involved and its surroundings, roughly represents the lands of the party to this action and its relative location, as well as the lands of other parties, witnesses herein.

There is a road, a graded highway, between §§ 23 and 26, and between §§ 23 and 24. There are sloughs or swales shown on the exhibit, roughly representing their respective locations and sizes and known under the name of the owner of the land upon which they are situated.

On the land of the defendant Parker, consisting of 320 acres, which he purchased in March, 1914, there is situated the Parker slough. The evidence shows that this has been a slough for over thirty-five years. When full and extending up to or near the road on the north it will cover in extent on such land about 50 acres. During this time there has always been water standing in this slough the year round, excepting in the year 1880 in the spring and in the year 1891. In dry years it does not contain much water but in wet years it is nearly full. Its depth varies from zero to 3 feet and over. In November, 1916, when the slough was then measured, it contained $40\frac{1}{2}$ acres and its then maximum depth was 3 feet. Under the testimony of Denneston, surveyor and witness for the defendant, there would be in such slough in a state of nature and without the highway grade at the north side, a depth of at least 2 feet of water therein before it would flow over to the north. This slough is the natural receptacle for the surface drainage of the lands of Johnson and Bergeson to the west and southwest. On the Bergeson land there are two small sloughs about 2 and 3 acres, respectively, in extent, which receive the surface waters on his place when the snow melts or heavy rains occur, and from these sloughs when full the drainage is into such Parker slough. In November, 1914, Parker consulted the county agricultural agent, Mr. Ulhorn, concerning the drainage of this slough. The agent first tried vertical drainage but this was ineffective. Then he advised Mr. Parker that the only thing left for him to do to get rid of such water was to put in a tile drain. Thereupon Parker secured an easement from Altman over his land to the north of such slough for the purpose of constructing a covered tile drain from such slough to a natural draw upon Altman's land. Thereafter, a covered tile drain was constructed in the months of April and May, 1915,

into this slough and upon Altman's land. It extended into the Parker land and this slough some 600 feet and upon the Altman land some 1,800 feet to the north and northeast, all laid underground to the depth in some places of 7 feet. This tile is porous tile 9 inches in diameter. The purpose of the defendant Parker in so doing is to drain the water in this slough so that he can cultivate this land, and he intends to keep this drain open so as to continue to drain this slough. On the Altman land there is a runway or draw, extending to this Parker slough and running northeasterly to the Froemke land and thence over to the Sunby slough, thence over and across the Olson land through a small slough, thence over the Kruger and Bussea lands to the Wall slough, which is a large slough consisting of some 90 acres with practically no outlet. Into this runway at the lower end of the tile drain on the Altman land the discharge waters from this slough were cast. They spread upon and over the Froemke, the Sunby, and the Olson lands, and have interfered with their cultivation of the soil and the raising of crops thereupon. The evidence discloses a substantial and practically a continuous discharge of such waters through such tile drain. The witnesses variously described this runway over these lands as to the lands it drains, the tributary watershed, its size, and characteristics. The appellants assert that it is a watercourse. It is a natural depression there existing between such Parker slough, Sunby slough, and the Wall slough. The natural slope to the north and northeast from this Parker slough is over and across the Altman, Froemke, Sunby, and Olson lands, and this runway receives from this adjacent territory the waters from winter snows, spring and other rains. The witness for the appellants, the county agent, states that there is a general slope down that way from the Parker slough, a depression or draw, a sort of valley between the hills, possibly 6 feet wide and 1½ to 2 feet deep. This runway flattens out as it proceeds over the Froemke, Sunby, and Olson lands. The general testimony is that very little water overflowed out of this Parker slough and over and across the road to the north and upon these lands where the runway or draw is, excepting when there were unusually heavy winter snows or heavy rains. A witness for defendant testifies that during periods of high water this Parker slough overflowed and the excess water found its outlet through this draw. There is some evidence

that contributions of waters to this runway on the Froemke land are made from an artesian well and a slough on the Seelig land, and to the Sunby slough in exceptionally wet seasons from the southeast. Prior to the construction of this tile drain these Froemke, Sunby, and Olson lands were farmed and cultivated upon and across this runway, and crops raised thereon, practically every season, with the exception of the Sunby slough some 15 acres in extent, and a small slough on the Olson land some 6 to 8 acres in extent. After this tile drain was constructed, this draw and these sloughs have been flooded. A stream of water proceeded from the lower end of this tile at times as large as 3 or 4 feet in width and 6 inches in depth. The draw on the Froemke land at times was covered with water varying in width from 117 to 142 feet. Some 15 acres of land thereon were flooded. On the Sunby land the waters flooded so as to increase the extent of the slough thereon as much as 62 to 70 acres. Crops were destroyed and some of the land could not be cultivated. On the Olson land, these waters came and flooded thereon some 15 acres more than the 8 acres of slough there, so that such 15 acres could not be cropped. Although in former years waters came down this draw from winter snows or spring rains, nevertheless these lands always theretofore could be farmed and cropped excepting as to the sloughs thereon. The evidence further discloses that in the years 1915 and 1916 the seasons were unusually wet. There is also considerable contention in the record as to whether there was a raise or ridge upon the land of Altman north of the roadway, and where the tile was laid. The appellant's witnesses disclaiming the existence of such raise or ridge and the plaintiffs' and interveners' witnesses asserting that the same exists. In any event the determination of this question does not affect, in our opinion, the principles of law applicable in this case.

On record in this case, the appellants contend:

(1) That the waters in the Parker slough are surface waters, temporarily accumulated.

(2) That the draw or runway across the Altman, Froemke, Sunby, and Olson lands, and thence on, is a watercourse.

(3) That the appellants possess an easement to discharge such surface waters in such claimed watercourse.

(4) That this natural outlet of the Parker slough has been obstructed

by the graded road, and by plowing and cultivation performed on the lands of respondents and Altman.

(5) That the flooding complained of was not occasioned by this Parker drainage, but through the extreme precipitation occurring in the years 1915 and 1916, and through the draining of the waters of the artesian well on the Seelig place.

On this record, these contentions of the appellant are readily and easily answered by the application of settled and well-known principles of law. It is first necessary to determine the status of this Parker slough and of this runway or draw under the principles of law applicable to waters. The appellants are placed in the peculiar position of contending that these very waters which they seek to discharge are while in the Parker slough surface waters, and when in this draw the waters of a watercourse. In other words, that the principles of law applicable to surface waters should apply to the Parker slough and the principles of law applicable to a watercourse to these waters when in the draw or runway.

1. The Parker slough has been and is a permanent body of water. It has there existed for a period of over thirty-five years. It does not and did not during all of these years drain off naturally through this draw. The only method of draining it is by this tile construction or by some similar artificial construction. Although its source of water supply comes from surface waters running down upon adjacent territory through the winter snows or spring or other rains, nevertheless such waters, when they reached this slough, even in a state of nature, there remained except when the slough was overflooded in seasons of unusual moisture. There they remained for purposes of evaporation or seepage in the soil, and there a pond was constituted. As such these waters in such slough lost their characteristics as surface waters. They became waters of such pond, and the principles of law applicable thereto are similar to those applicable to watercourses; the principal distinction being that in a pond or lake the waters are substantially at rest, while in a stream or watercourse they are in motion. Schaefer v. Marthaler, 34 Minn. 487, 57 Am. Rep. 73, 26 N. W. 726; McKinley v. Union County, 29 N. J. Eq. 171; Palmer v. Waddell, 22 Kan. 352; Hill v. Cincinnati, W. & M. R. Co. 109 Ind. 511, 10 N. E. 410; Elrich v. Richter, 41 Wis. 318; Trustees of Schools v. Schroll, 120 Ill. 509, 60 Am. Rep. 575, 12 N. E. 243; 3 Farnham, Waters, 2557.

In this connection it is wholly unnecessary to consider whether this slough has been surcharged with water by reason of the construction of the road grade on the north; for it is the declared purpose and intention of the defendant Parker to drain this entire pond or slough by this tile drain, and it was constructed for that purpose, and it will accomplish that purpose.

These waters, therefore, in the Parker slough proper were and are not surface waters.

2. The draw or runway in question is simply a natural drainage channel for such surface waters that are occasioned by winter snows or spring rains upon the tributary lands, or from the excess of overflow waters naturally of the Parker slough. It serves this purpose only occasionally and temporarily. It possesses none of those characteristics of a definite bed, definite channel, of a permanent source of water supply, either continuous or periodic, to establish the same as a watercourse. Comp. Laws 1913, § 5341; Rait v. Furrow, 74 Kan. 101, 6 L.R.A.(N.S.) 157, 85 Pac. 934, 10 Ann. Cas. 1044; Harrington v. Demaris, 46 Or. 111, 1 L.R.A.(N.S.) 756, 77 Pac. 603, 82 Pac. 14; 2 Farnham, Waters, 1555.

3. The draw or runway was and is simply a natural drainway for the surface waters of the watershed that it serves. The lower landowner over whose land such natural drainway exists has no legal ground of complaint to the reception of the surface waters in such drainway from the tributary watershed, as they are accustomed to come in a state of nature. Soules v. Northern P. R. Co. 34 N. D. 7, L.R.A. 1917A, 501, 157 N. W. 823; 3 Farnham, Waters, 2599; See note in L.R.A.1917A, 517.

Although this court in Reichert v. Northern P. R. Co. 39 N. D. 115, 167 N. W. 136, stated that natural drainways are subject to the same rules as if they were running streams, such statement as a principle of law must be taken only in connection with the facts in that case, and not to all situations where the rights of a riparian owner upon a watercourse are concerned.

The principle of law announced concerning drainways has been principally applied to the right to drain off surface waters through such drainways, and do not involve the general and other principles of

law that apply to watercourses, and the rights of upper and lower riparian owners thereupon.

Upon the facts in this case, there is no necessity of considering whether the civil law or the so-termed common enemy rule, or any modification of the same concerning surface waters, should be applied in this state. For, under such facts and the principles of law stated, the appellants neither had nor have any legal right to drain or discharge those waters of the Parker slough by and through such artificially constructed tile drain to the damage of lower landowners, either under the civil law or under the common enemy rule, concerning the disposition of surface waters, especially when the maxim *"sic utere tuo"* is applied, in the consideration of the common enemy rule. Justinian Dig. bk. 39, title 3, § 1; Code Napoleon, § 640; Partidas, bk. 3, title 32, § 15; Ware, Roman Water Law, pp. 21, 57; Martin v. Jett, 12 La. 501, 32 Am. Dec. 120; Hooper v. Wilkinson, 15 La. Ann. 497, 77 Am. Dec. 194; 3 Farnham, Waters, 2574, 2578; Brandenberg v. Zeigler, 62 S. C. 18, 55 L.R.A. 414, 89 Am. St. Rep. 887, 39 S. E. 790; Boll v. Ostreet, 25 S. D. 513, 127 N. W. 577; Boyd v. Conklin, 54 Mich. 583, 52 Am. Rep. 831, 20 N. W. 595; Barkley v. Wilcox, 86 N. Y. 140, 40 Am. Rep. 519; Carroll v. Rye Twp. 13 N. D. 458, 101 N. W. 894; North Point Consol. Irrig. Co. v. Utah, & S. L. Canal Co. 16 Utah, 246, 40 L.R.A. 851, 67 Am. St. Rep. 607, 52 Pac. 168.

It is clear, therefore, that the appellants possess no easement to so drain the Parker slough through such tile drain into said drainway.

4. The appellants possessing no legal right to drain this Parker slough by this artificial construction to the damage of lower landowners, it is therefore immaterial whether the natural outlet of such Parker slough has been obstructed either by the graded road or by the plowing and cultivation of the draw involved.

5. It is likewise immaterial whether the flooded condition of the lands of the respondents herein was, in part, due to the excessive precipitation of rain or snow during the time of the operation of such tile drain, or was, in part, occasioned by drainage from the Seelig artesian well; for it is clear from the record that the artificial construction of the appellants imposes upon the land of the respondents an additional burden of water in excess of that which naturally would come there, whether the season be wet or dry, and to that extent, appreciable as the

record herein discloses, the respondents' lands are charged with an artificial burden thereupon which the appellants have no legal right to so create.

The appellants contend that this clause presents questions of vital concern to the agricultural needs of this state in drainage and reclamation, and that the interests of good husbandry and of agricultural development require, as a matter of policy, the recognition of the right to the drainage of marshes and sloughs of stagnant water in the beneficial improvement of farm lands in this state.

This record has been considered carefully by this court. The application of well-settled principles of law satisfies this court that the judgment of the trial court was right.

In this state, where the principal industry is the tilling of the soil, it is important to recognize, in maintaining our farming interests and the product of the farmer's toil, that many developed, cultivated, and productive farms have so become upon the reliance of the farmers thereof that the burdens of nature imposed upon their lands would not be increased by artificial constructions to their damage without compensation to them except in accord with settled principles of property rights. Those who hereafter desire, in the beneficial improvement of their own farm lands, to cast some of these burdens of nature upon such farm lands below them, must equally recognize and rely upon these settled principles of law.

The judgment of the trial court is affirmed.