## TURNER et al. v. BIG LAKE OIL CO. et al.
### No. 2868.

Court of Civil Appeals of Texas. El Paso.
June 29, 1933.

Rehearing Denied July 19, 1933.

Kerr & Gayer, of San Angelo, for appellants.

Smith & Neill, of San Angelo, and Burney Braly, G. R. Pate, and G. B. Smedley, all of Fort Worth, for appellees.

HIGGINS, Justice.

Anna Lee Turner, joined pro forma by her husband, Price Turner, filed suit in the district court of Reagan county against the Big Lake Oil Company and Group No. 1 Oil Corporation.

Briefly stated, her petition discloses the following material facts:

Plaintiff owns two sections of land, Nos. 1201 and 1206. The Garrison draw, "a natural water course," a tributary of the Centralia draw, crosses the two sections. On the land and a part of the draw and water course are "watering holes" for live stock. Defendants had accumulated lakes or ponds of refuse oil, salt, and sulphur water near the source of Garrison draw and plaintiff's land.

On or about August 10, 1932, the levees or dams surrounding the lakes aforesaid broke, and the contents overflowed plaintiff's land, poisoning, killing, and damaging the vegetation, and polluting the said watering holes and water course. Negligence, in various particulars, on the part of defendants, in permitting the levees and dams to break and the water to overflow plaintiffs' land, was alleged. It was alleged the land had been permanently damaged by such overflow, for which damages Mrs. Turner sued.

At the same time Price Turner filed suit against the same defendants. His suit arises out of the same facts set up in Mrs. Turner's suit. Price Turner's suit is to recover damages to his cattle and sheep being pastured on said sections 1201–1206, and surrounding lands in his pasture.

The court ordered the consolidation of the two suits and tried the same as one.

The first five issues submitted read:

"Special Issue No. 1: Do you find and believe from a preponderance of the evidence, that the Defendants, Big Lake Oil Company and Group No. 1 Oil Corporation, subsequent to June 20, 1932, permitted salt water to overflow from their salt ponds and lakes down Garrison Draw and on to the land of Plaintiffs, Mrs. Anna Lee Turner? Answer Yes or No.

"Special Issue No. 1-a: Do you find and believe from a preponderance of the evidence that the Defendants, Big Lake Oil Company and Group No. 1 Oil Corporation, subsequent to June 20, 1932, negligently failed to construct dams large and strong enough to hold the salt water accumulated by them? Answer Yes or No.

"Special Issue No. 2: Do you find and believe from a preponderance of the evidence, that the defendants, Big Lake Oil Company and Group No. 1 Oil Corporation, subsequent to June 20, 1932, negligently permitted salt water to overflow and break the dams and levees constructed by them? Answer Yes or No.

"Special Issue No. 3: Do you find and believe from a preponderance of the evidence, that the defendants, Big Lake Oil Company and Group No. 1 Oil Corporation subsequent to June 20, 1932, negligently failed to supervise their lakes and ponds, if they did fail to supervise same? Answer Yes or No.

"Special Issue No. 4: Do you find and believe from a preponderance of the evidence, that the defendants, Big Lake Oil Company and Group No. 1 Oil Corporation, subsequent to June 20, 1932, negligently failed to repair the breaks in said lakes and dams, if any, when the same did break, if they did so break? Answer Yes or No."

The first issue was answered "Yes" and the others "No." Additional issues, conditionally submitted, were not answered.

Upon the answers to the issues above quoted, judgment was rendered for the defendants.

We will not consider the propositions submitted by appellants in the order of their presentation in the brief.

The evidence shows that in August, 1932, water escaped from the reservoirs maintained by defendants and flowed down Garrison draw, overflowing portions of Mrs. Turner's land and collecting in the water holes in the draw upon said land. It is contended this water was polluted with salt, injured Mrs. Turner's land and the vegetation thereon, in consequence of which Mrs. Turner's land was damaged and Price Turner's cattle and sheep were injured by the polluted vegetation and water in the water holes.

Various propositions assume that Garrison draw is a water course; that the pollution with salt water of such water course and water holes is prohibited by article 698 of the Penal Code and chapter 42, Acts 42d Legislature, 1st Called Sess., p. 88 (Vernon's Ann. P. C. art. 698a), and for that reason the defendants were negligent per se in permitting the escape and flow of such water down the draw.

The water holes were privately owned by Mrs. Turner. They were not public bodies of water, such as are referred to in article 698. For that reason said article has no application to the pollution of the water holes.

The act of the Forty-Second Legislature prohibits the pollution of "any stream, water course or natural body of water *of this State.*" (Italics ours.)

The petition seems to have been drawn with the view of charging a violation of the act upon the theory that Garrison draw is a water course, but it is alleged that "there is situated on said two sections of land along said draw, and a part of said draw and water course, watering holes for livestock, such watering holes furnishing a continuous supply of water for livestock, some of said watering holes being several hundred yards in length." If the act has any application, this is perhaps sufficient to show that such watering holes are natural bodies of water.

Price Turner testified concerning one "watering hole" which he said was three or four hundred feet long and about fifty steps wide. He said there were some other watering holes, but did not state their size.

■ The act in question is a penal statute; offenders being punishable by fine. It is strictly penal in the sense that the penalty is imposed upon offenders as punishment for a wrong to the public rather than for the redress of injury to individuals. 59 C. J. 1111.

■ Upon a reading of the entire act, including its caption, we think that, so far as

concerns a "natural body of water *of this State*," it refers to waters owned by the state, and not to natural bodies of water privately owned, as are the watering holes in the draw upon Mrs. Turner's land. We think the phrase "of this State" is used in the sense of ownership. Throughout the body of the act it refers to "natural body of water of this State," and we think it refers to waters owned by the state in trust (see article 7467, R. S.), and not to waters privately owned.

■ For these reasons we are of the opinion the salt water pollution of the watering holes does not constitute a violation of article 698, R. C., nor the act of the Forty-Second Legislature, unless it can be said that Garrison draw is a water course within the meaning of the laws mentioned.

In common parlance, any natural depression through which surface water flows is considered a water course. But in a legal sense the term "water course" has a much more restricted meaning.

■ In Hoefs v. Short, 114 Tex. 501, 273 S. W. 785, 787, 40 A. L. R. 833, Chief Justice Cureton said:

"Various authorities have held that in order for there to be a natural water course, there must be a channel, consisting of well-defined bed and banks, a current of water, and a permanent source of supply. 1 Kinney on Irrigation, §§ 303, 305, 306, 307, 312, 315, 317; 27 Ruling Case Law, pp. 1062, 1063, 1064, 1065, 1066, 1067; Rait v. Furrow, 74 Kan. 101, 85 P. 934, 6 L. R. A. (N. S.) 157, 10 Ann. Cas. p. 1044; Jaquez Ditch Co. v. Garcia, 17 N. M. 160, 124 P. 891; Macomber v. Godfrey, 108 Mass. 219, 11 Am. Rep. 349; West v. Taylor, 16 Or. 165, 13 P. 665; McClure v. Red Wing, 28 Minn. 186, 9 N. W. 767; Mo. Pac. Ry. Co. v. Wren, 10 Kan. App. 408, 62 P. 7; Simmons v. Winters, 21 Or. 35, 27 P. 7, 28 Am. St. Rep. pp. 727, 730; Mace v. Mace, 40 Or. 586, 67 P. 660, 68 P. 737.

"These authorities and others which follow show that, while the rule as ordinarily expressed is that a water course must have a well-defined channel, bed, and banks, yet there may be instances where these are slight, imperceptible, or absent, and still a water course exit.

"All authorities agree that a current of water is necessary, yet the flow of water need not be continuous, and the stream may be dry for long periods of time. Authorities supra; 1 Kinney on Irrigation, § 307; Angell on Watercourses (6th Ed.) § 4; 27 Ruling Case Law, pp. 1063, 1066, 1067."

In that case Judge Cureton held Barilla draw to be a natural water course to which riparian rights attached.

In the course of the opinion it was further said: "The general rule is that ravines, swales, sloughs, swamps, and marshes are not water courses, and yet they are sometimes."

The authorities all agree that a water course in its legal sense must have certain essential characteristics. It is usually stated that it must have a channel, with a well-defined bed and banks, and a current of water with a permanent source of supply. Hoefs v. Short, supra.

Barilla draw had a channel with well-defined bed and banks. Water flowed therein following rains in the area which it drained. The Court of Civil Appeals recognized that it had all of the essential characteristics of a water course except a permanent source of water supply. 190 S. W. 802. Judge Cureton held it had this essential feature.

In the case at bar, the evidence is silent as to whether Garrison draw has a channel with well-defined bed and banks. There is but little testimony with reference to the flow of water therein. Turner testified it took a good rain to make it run. It appears to be from one-fourth to one-half mile in width and several miles long. It evidently drains a considerable area.

Under the evidence it would seem that Garrison draw is just a wide valley; a typical West Texas draw. The evidence is insufficient to show that it has any of the essential characteristics of a water course in the legal sense of that term and falls within the rule announced by Judge Cureton applying to ravines, swales, etc., which are not generally considered as water courses. Hoefs v. Short, supra; Cartwright v. Warren (Tex. Civ. App.) 177 S. W. 197; International & G. N. Ry. Co. v. Reagan (Tex. Sup.) 49 S.W. (2d) 414; volume 3, Bouvier's Law Dictionary, p. 3437; Chicago, K. & N. Ry. Co. v. Steck, 51 Kan. 737, 33 P. 601; Sanguinetti v. Pock, 136 Cal. 466, 69 P. 98, 89 Am. St. Rep. 169; Le Munyon v. Gallatin Valley Ry. Co., 60 Mont. 517, 199 P. 915; Froemke v. Parker, 41 N. D. 408, 171 N. W. 284; Morrissey v. Chicago, B. & Q. R. Co., 38 Neb. 406, 56 N. W. 946, 57 N. W. 522.

■ The evidence cannot be considered sufficient to show as a matter of law that it was a water course. The evidence certainly raised no more than an issue of fact in that respect.

■ Appellants did not request the submission of such issue, and they must be considered as having waived the same. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084; Continental Oil Company v. Berry (Tex. Civ. App.) 52 S.W.(2d) 953; Alexander v. Good Marble & Tile Co. (Tex. Civ. App.) 4 S.W.(2d) 636; Dallas Hotel Company v. Davison (Tex. Com. App.) 23 S.W.(2d) 708.

■■ Plaintiffs pleaded as negligence the various matters submitted in issues 1A, 2,

3, and 4, and further alleged: "That defendants, their servants and employees, on or about August 10, 1932, were negligent in many other ways unknown to plaintiff, but well known to defendants and each of them, in permitting and allowing and in not preventing said salt water and other substances to flow upon and across said lands."

To this general allegation of negligence defendants excepted, "for the reason that it is vague and indefinite and does not charge this defendant or either of the defendants with any particular or specific act of negligence."

The exception was sustained, and to such action error is assigned.

The rule with respect to general allegations of negligence is stated in Missouri Pac. Ry. Co. v. Hennessey, 75 Tex. 155, 12 S. W. 608, 609, as follows: "Where, from the nature of the case, the plaintiff would not be expected to know the exact cause, or the precise negligent act which becomes the cause, of an injury, and where the facts are peculiarly within the knowledge of the defendant, he would not be required to allege the particular cause, but it would be sufficient to allege the fact in a general way, as that there was a defect of machinery or structure, or want of skill in operating on the part of defendant or its servants, or some such fact as would give the defendant notice of the character of proof that would be offered to support the plaintiff's case. Railway Co. v. Brinker, 68 Tex. 502, 3 S. W. 99; Williams v. Railway Co., 60 Tex. 206."

It is not averred that these "other ways" of negligence were peculiarly within the knowledge of defendants, and the case is not of such nature as would necessarily make them so. The exception was properly sustained. Garrow, McLain & Garrow v. Allen (Tex. Civ. App.) 260 S. W. 887; Negociacion Agricola, etc., v. Love (Tex. Civ. App.) 220 S. W. 224; Patton-Worsham Drug Co. v. Drennon, 104 Tex. 62, 133 S. W. 871.

■ The action of the court in consolidating the two cases presents no error.

The respective causes of action of Mr. and Mrs. Turner might properly have been voluntarily joined by them. The issues of negligence were common to both suits. No possible injury could have resulted from the consolidation.

■ Misconduct on the part of the jury is charged. At request of appellants, the court filed findings upon the issues presented by the charges and the evidence adduced. The court found all the issues against appellants. Upon the various charges, the evidence is conflicting except upon one phase, which we will later briefly refer to. The court's findings upon those issues where the evidence was in conflict controls, and we see no occasion to disturb such findings.

One of the jurors in effect testified that he did not agree to the verdict as returned, and there is no direct evidence to contradict the juror's statement to that effect. The court found "that when the answers of the jury were returned into court the judge read each issue carefully and distinctly to the jury and the answer made to the issue and then polled the jury on each issue and answer as read by him by asking the jury if such was the answer of each of them to the issue as read, which was continued until each issue answered by the jury had been read, together with the answer, and that no member of the jury answered that such was not his individual answer but on the contrary assented thereto." The testimony of all of the jurors supports this finding.

This matter presents an effort to impeach the verity of a verdict returned in open court, and there solemnly assented to. It is not permissible to thus impeach a verdict. Moore v. Orgain (Tex. Civ. App.) 291 S. W. 583; Jenkins v. Moore (Tex. Civ. App.) 230 S. W. 886; Commercial Standard Ins. Co. v. Miller (Tex. Com. App.) 48 S.W.(2d) 618; Bradley v. T. & P. Ry. Co. (Tex. Com. App.) 1 S.W.(2d) 861; Farrand v. H. & T. C. Ry. Co. (Tex. Civ. App.) 205 S. W. 845; Watts v. Texas Employers' Ins. Ass'n (Tex. Civ. App.) 264 S. W. 186.

The court did not err in refusing to file additional findings of fact. The findings made were full, complete, and unambiguous. The so-called request for additional findings inquired what the court meant by certain findings. The meaning of the findings was plain. There was no occasion to explain the same. The findings were sufficient. Manchester F. I. Co. v. Simmons, 12 Tex. Civ. App. 607, 35 S. W. 722; Houston & T. C. R. Co. v. Davis (Tex. Civ. App.) 32 S. W. 163.

The case was well and fairly tried.

Finding no error, the judgment is affirmed.