IN RE PETITION OF RONALD W. STEVENS AND OTHERS FOR CONSTRUCTION OF LATERAL C OF CHIPPEWA COUNTY DITCH NO. 22 v. STATE, BY DOUGLAS M. HEAD.

190 N. W. (2d) 482.

October 1, 1971—No. 42627.

*Warren Spannaus,* Attorney General, *Will Hartfeldt,* Deputy Attorney General, and *William G. Peterson,* Special Assistant Attorney General, for appellant.

*Nelson, Oyen & Torvik* and *John P. Nelson,* for respondents.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Peterson, JJ.

Otis, Justice.

This appeal arises out of a proceeding to construct a public ditch designated as Lateral "C" of Chippewa County Ditch No.

22. The project was approved by the county commissioners whose order establishing the lateral was affirmed on appeal to the district court. Because the Grace Wetlands Unit, a conservation area owned by the State of Minnesota, will be damaged by the diversion of surface water as a result of constructing the lateral, we hold that the state is entitled to compensation pursuant to Minn. St. 106.672.

Between 1957 and 1961 the state acquired the 480 acres known as the "Grace Marshes" for propagating game birds and permitting public hunting. Almost $50,000 has been spent on the project. The area here in question is designated Lake 12-45. It consists of a body of water some 30 to 40 acres in size, with a depth ranging from .9 feet to 1.9 feet. The north portion of the lake is situated in section 21, Township 119 north, Range 39 west, on land owned by the petitioner Ronald W. Stevens. He seeks to have it drained in order to make the property available for cultivation. The lower portion of the lake, situated in section 28 of the same township, is owned by the state and will not be drained. In the 1930's, a road divided the lake on the section line. However, since about 1941 the two bodies of water have been united into one lake and the road has now disappeared.

The proposal approved by the county board contemplates a ditch and dike between the Stevens' property and the wetlands unit owned by the state, and a further dike along the east line of section 28.

It is conceded that the level of the lake is largely maintained through surface water runoff which drains from other property to the east and north. The proposed ditch and dike will have a seriously detrimental effect on maintaining the wetlands at a uniform depth. The principal issue before us is whether or not the diversion of surface water by eminent domain proceedings brought by the county entitles the state in its proprietary capacity to damages which it could not otherwise recover if the diversion were accomplished by an adjoining property owner.

■ In a number of early cases we had occasion to consider a

property owner's right to dam, divert, or release surface water without liability to neighboring property owners thereby affected. Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462.[1] At common law, surface water was treated as a "common enemy" for each owner to dispose of as best he could.

"* * * [F]or one owner is under no obligation to receive upon his own land surface waters from the land of another, nor to permit them to flow from his land to that of another, nor to retain them on his land for the benefit of other lands. * * * But before they reach the watercourse, while they are still surface waters,—that is, while they are oozing through the soil, or diffusing or squandering themselves over the surface, following no defined course,—the owner of the soil on which they happen to be may appropriate or divert them in the ordinary and reasonable use of his land." Schaefer v. Marthaler, 34 Minn. 487, 489, 26 N. W. 726, 727.

In re Town Ditch No. 1, 208 Minn. 566, 570, 295 N. W. 47, 49, undoubtedly as a result of the drought in the 1930's, reflects second thoughts had by this court on earlier pronouncements concerning the law of surface water. We observed in a footnote:

"* * * The doctrine of [Schaefer] and other cases, that surface water is a 'common enemy' may be somewhat out of date. Long decreased precipitation over large areas may have converted it, or much of it, into a common friend because of its sorely needed contribution to the subterranean water supply, and the consequent elevation of the water table to, and its maintenance at, a plane sufficiently high to support vegetation."

That case went on to hold that the common-law rules governing the disposition of surface water do not apply where the diversion occurs as a result of a public undertaking instituted by a town board for the construction of a drainage ditch. Under such cir-

---

[1] See, also, O'Brien v. City of St. Paul, 25 Minn. 331, 33 Am. R. 470; Pflegar v. Hastings & Dakota Ry. Co. 28 Minn. 510, 11 N. W. 72; Schaefer v. Marthaler, 34 Minn. 487, 26 N. W. 726.

cumstances, we said the town did not enjoy the rights of a landowner but was exercising the governmental prerogative of eminent domain. Consequently, adversely affected landowners were entitled to compensation for their damages. Two members of the court dissented.[2]

We think the rule thus adopted governs our decision. It seems clear that the legislature had this result in mind in enacting the unequivocal language of Minn. St. 106.672, which provides in part as follows:

"Subdivision 1. In any case where a land or water area owned by the state and held or used for the purpose of protecting or propagating wild animals, providing hunting or fishing for the public, or for any other purpose relating to the conservation, development, or use of soil, water, forests, wild animals, or related natural resources will be affected by any project or proceeding specified in section 106.671, all proceedings relating thereto shall be subject to the following provisions, so far as applicable.

"Subd. 2. Any such area or part thereof may be taken or damaged for the purposes of any such project upon payment of just compensation therefor as provided by law and upon the following conditions:

\* \* \* \* \*

---

[2] The prevailing law is stated as follows in 26 Am. Jur. (2d) Eminent Domain, § 195: "* * * So, it appears that a body possessing the right to exercise the power of eminent domain is required to make compensation for damages to land not taken resulting from the obstruction or diversion of, or other interference with, the natural flow of surface water, by a public improvement, although a private landowner would not be liable in damages under the same circumstances, upon the ground that such obstruction, diversion, or interference is a taking or damaging of such land within the meaning of a constitutional provision requiring compensation to be made on the taking or damaging of private property for public use." See, also, Annotation, 128 A. L. R. 1195, 1198.

"(2) In determining the compensation to be paid for such taking or damage, due consideration shall be given to the value of the premises for the purposes for which the same are held or used by the state, together with other material elements of value;

\* \* \* \* \*

"Subd. 3. In determining benefits to any such land or water area in any such proceeding for the purpose of levying assessments therefor or offsetting the same against damages, due consideration shall be given to the value of the premises for the purposes for which the same are held or used by the state, together with other material elements of value."[3]

The trial court in a memorandum attached to its findings expressed succinctly misgivings which we share:

"\* \* \* It is understandable that certain farmers desire to have their individual farms drained so as to make the farm more productive. At the same time, looking at the picture as a whole, it appears ridiculous in light of the fact that in Grace Township in 1969 3,597 acres were taken out of production under Federal programs. We are in a relatively wet cycle at this time. Those who lived in the drouth period of the 1930's have some apprehension about drainage."

However, the court concluded, "[T]he drainage code of this state is strongly slanted in favor of the establishment of drainage systems." Consequently, although the court made a finding that the conservation area would be damaged by the loss of surface water, it denied the state compensation.

We discern a legislative policy of preserving, wherever possible, wetland conservation areas designed to prevent the depletion of wildlife as the pressures of hunting increase. Minn. St. 106.671 imposes on the county the duty of considering the "conservation of soil, water, forests, wild animals, and related nat-

---

[3] Minn. St. 106.151, governing drainage procedures, requires viewers to report benefits and damages on all lands owned by the state the same as upon taxable lands.

ural resources" before determining whether a drainage project will be a public benefit. The legislature has left little doubt as to its intent by adopting the language of Minn. St. 111.82:

"It is the policy of the state to promote the retention and conservation of all water precipitated from the atmosphere in the areas where it falls, as far as practicable."

Where, as here, the state has acquired 480 acres of wetlands for conservation purposes at a cost approaching $50,000, and it is undisputed that the county drainage project will seriously impair the effectiveness of the area for conserving wildlife, we hold that the state has suffered a compensable loss.

■ The state argues that lake 12-45 is a public body of water which cannot be drained without the authority of the commissioner of natural resources under Minn. St. 106.021 and 105.42. The statutory definition of a public water is one "capable of substantial beneficial public use." § 105.38(1). The trial court noted in its memorandum that the part of the lake in section 21 which would be drained by the project was of limited size and depth and that under Minn. St. 106.021, subd. 2, the county board was authorized to drain it because of its shallow, marshy character. In holding that the lake was not public water capable of substantial beneficial use, the court pointed out that it was not suitable for swimming or fishing but only for hunting. This was a fact determination which we find to be supported by the evidence. Consequently, the statute requiring a permit from the commissioner of natural resources is not applicable.

The other issues raised we have considered but do not find it necessary to discuss them.

Reversed and remanded.

MR. JUSTICE KELLY took no part in the consideration or decision of this case.